## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal Action No.  07-015 (JDB)** |
| **DOUGLAS LLOYD,** | **UNDER SEAL** |
| **Defendant.** | |

## MEMORANDUM OPINION

This case is before the Court on remand from the D.C. Circuit.  Pursuant to a plea agreement, defendant pled guilty in this Court to unlawful distribution of heroin.  On appeal, defendant claimed that he had received ineffective assistance of counsel during plea negotiations.  The D.C. Circuit remanded for an evidentiary hearing on this claim.  On remand, defendant filed a motion to dismiss due to ineffective assistance of counsel, and this Court held an evidentiary hearing thereon.  For the reasons given below, the Court will deny defendant's motion.

## BACKGROUND

On February 18, 2006, defendant was arrested after he sold $20 worth of heroin to an undercover officer and then, approached by other officers, tossed to the ground 32 ziplock bags containing a substance that tested positive for opiates.  See 2/1/07 Tr. [ECF 27] at 19-20.  Defendant was at first indicted in the Superior Court of the District of Columbia on one count of unlawful distribution of heroin and one count of unlawful possession with intent to distribute heroin, both in violation of D.C. Code § 48-904.01(a)(1).  Def.'s Mot. to Dismiss ("Mot. Dismiss"), Indictment [ECF 43, Ex. B].

Defendant was represented in Superior Court by David Stringer.  See Def.'s Aff. [ECF

51, Ex. 1] ¶ 1.  From the outset of the representation, defendant told Stringer that he did not want to go to trial and instead wished to enter a guilty plea.  Id. ¶ 3.  The government made defendant a plea offer, under which defendant would have pled guilty to the unlawful distribution charge, the government would have dropped the unlawful possession with intent to distribute charge, and the sentencing range in Superior Court would have been 24-48 months.  Id. ¶ 1; see also U.S.'s Resp. to Def.'s Sentencing Mem. [ECF 37] ("U.S. Sent'g Resp.") at 3 n.2.  Stringer informed defendant of this plea offer.  Def.'s Aff. ¶ 1.  However, the government withdrew its plea offer because it determined that the case was a "mandatory debrief."  See 4/28/06 Tr. [ECF 51, Ex. 11] at 2.  At an April 28, 2006 status hearing, Stringer told the court that the government had made and then withdrawn a plea offer, and the government took the position that "there is no offer without a debrief, and that the debrief must present something of interest to the United States."  Id. at 2-3.  During a recess in the proceedings, defendant left the courthouse, saying he had to make a phone call, and did not return.  Id. at 7-8.  The Superior Court judge issued a warrant for his arrest.  Id. at 8.  Defendant was rearrested in June and held without bond.  See 6/30/06 Tr. [ECF 51, Ex. 13] at 4.  This arrest also led to defendant being charged in a second Superior Court case with two counts of misdemeanor possession of a controlled substance.  See U.S. Sent'g Resp. at 4 n.4.

In August, the government sent Stringer an offer to debrief defendant.  See U.S. Sent'g Resp. at 4 n.5.  Although this did not include a plea offer, defendant agreed to debrief. See id.  Between August and October, defendant participated in about seven to nine debriefing sessions.  See Def.'s Aff. ¶ 2; 6/3/11 Tr. [ECF 58] at 16.  Stringer was present at only the first debriefing.  Def.'s Aff. ¶ 2.  Later debriefings "intensified" and were attended by federal prosecutor Edward O'Connell and federal agents.  6/3/11 Tr. at 15-17.  As a result of

the debriefing sessions, the government told defendant that it would give him a plea offer if

he agreed to cooperate, and specifically, if he would testify before a grand jury and be

available to testify in a prosecution.  Def.'s Aff. ¶ 7; 6/3/11 Tr. at 22.[1]  Defendant said he

would testify only if he could ensure that he would not endanger his family by doing so.

6/3/11 Tr. at 22.  O'Connell then told defendant that he "could give [defendant's] family

relocation if he took the case over to federal court."  Id. at 23.  According to defendant,

O'Connell also said that defendant's sentencing exposure in federal court "would be basically

the same" as his sentencing exposure in Superior Court and that defendant's maximum

guidelines sentence in federal court would be five years.  Id. at 24-25; see also Def.'s Aff.

¶¶ 2, 15.  Defendant discussed the government's offer with Stringer, who advised defendant

against cooperating if it would endanger defendant's family but did not advise defendant on

his potential sentencing exposure in federal court because he did not know what that

exposure would be.  See Def.'s Aff. ¶ 8; 6/3/11 Tr. at 22, 25-26.  Defendant said that he

researched the issue himself, by going to the law library and looking at a chart in the federal

sentencing guidelines, and from that concluded that his federal guidelines range would be one

to five years.  6/3/11 Tr. at 26-27, 31.  Based on his understanding that his family could get

relocation benefits and that his successful cooperation could result in a lighter sentence,

defendant agreed to plead guilty in federal court.  See Def.'s Aff. ¶¶ 9, 14; 6/3/11 Tr. 50-51,

56.

     In the course of the plea discussions and debriefing sessions, defendant had written

---

[1] The subject matter of the debriefings, and presumably defendant's proposed cooperation, involved drug distribution (beyond just the transaction that led to defendant's arrest), defendant's daughter's kidnapping, and a retaliatory homicide.  See 6/3/11 Tr. at 17-21.

two letters to the court complaining about Stringer's representation.  See 10/20/06 Tr. [ECF 51, Ex. 16] at 2-3.  At a status hearing on October 20, 2006, the court raised these letters for discussion.  Id. at 2.  Stringer said that defendant's complaints, at least in part, were "pretty much mooted out" because the case was "in the cooperation phase" and there was "a proposal on the table" for defendant to enter a guilty plea in federal court.  Id. at 4.  Hence, Stringer said, "[t]his Court's probably going to lose jurisdiction on these cases in the next few weeks." Id.  The court nevertheless asked defendant if he was "still satisfied with [his] lawyer" and if he wanted Stringer to continue representing him.  Id. at 5.  Defendant said "Yes" to both questions.  Id.

In December 2006, Shawn Moore, a federal public defender, began representing defendant.  See 6/3/11 Tr. at 90.  At that point, according to Moore, defendant wanted to cooperate with the government, both for sentencing purposes and to protect himself and his family.  Id. at 93-94.  Moore testified that when the case came to federal court, "the [plea] agreement was pretty much in place" so he could not "somehow send it back to superior court" and that "there was no indication on [defendant]'s part that he wanted to go back . . . and plead in superior court."  Id. at 97.  The government sent Moore a proposed plea and cooperation agreement on December 18, 2006.  See 12/18/06 Proposed Plea Agreement [ECF 51, Ex. 2].  Defendant signed a revised version of this agreement on January 21, 2007. See Plea Agreement [ECF 8] at 10.

Pursuant to the plea and cooperation agreement, defendant agreed to plead guilty to one count of unlawful distribution of heroin, to be held accountable for at least 2.1 grams of heroin for sentencing purposes, and to cooperate with the government as set forth in the agreement.  Id. ¶¶ 1-2, 5-7.  Defendant acknowledged that distribution of heroin as charged

carried a maximum penalty of 30 years' imprisonment, that he would be sentenced under the

U.S. Sentencing Guidelines, and that, if he had two or more convictions for a crime of

violence or felony drug offense, he could "be subject to the substantially higher guideline

penalties provided for in the career offender statutes and provisions of the Sentencing

Guidelines." Id. ¶ 1.  In exchange for defendant's plea and anticipated cooperation, the

government agreed not to file enhancement papers under 21 U.S.C. § 851(a), to dismiss

defendant's two pending cases in Superior Court, to request defendant's release pending

sentencing so defendant could assist in investigative activity, and, if defendant provided

substantial assistance and complied with his obligations under the agreement, to file a

departure motion under Section 5K1.1 of the Sentencing Guidelines.  Id. ¶¶ 4, 15, 16, 19.

The government also agreed that, if requested by defendant, and if appropriate "in the sole

discretion of" the District of Columbia U.S. Attorney's Office, that Office would sponsor

defendant for acceptance into the Department of Justice Witness Security Program.  Id. ¶ 25.

     The government filed an information in this Court charging defendant with one count

of unlawful distribution of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

Information [ECF 4].  On February 1, 2007, defendant entered a plea of guilty to that charge.

Moore later testified that before the plea entry, he had gone through the plea agreement with

defendant and specifically told defendant that he qualified as a career offender and was

"looking at a substantial period of time."  6/3/11 Tr. at 91-92.  At the plea hearing, defendant

confirmed that he had read the plea agreement carefully and discussed it with Moore.  2/1/07

Tr. at 22.  In addition, this Court asked defendant: "And do you understand that if you were

determined to be a career offender because of two or more prior convictions for a crime of

violence or a felony drug offense, then you would be subject to substantially higher

penalties?"  Id. at 25.  Defendant said, "Yes," he understood.  Id.

Pursuant to the plea agreement, defendant's two pending Superior Court cases were dismissed, and defendant was released pending sentencing.  See 2/9/07 Tr. [ECF 51, Ex. 18] at 2; 2/20/07 Tr. [ECF 28].  Defendant's cooperation began well but ultimately was not successful.  See 9/19/07 Tr. [ECF 29] at 2; 1/16/08 Tr. [ECF 30].  He testified before a grand jury about one of his associates, but his additional efforts at cooperation devolved into "half-stepping" and did not provide anything "specific" or "concrete" to the government.  See 1/16/08 Tr. at 2-3; 4/16/08 Tr. at 13.  In addition, defendant repeatedly tested positive for drug use and was rearrested.  1/16/08 Tr. at 5.  Accordingly, at the request of the government and a Pretrial Services agent, the Court ordered defendant held pending sentencing.  Id. at 3, 5, 8-9.  On April 16, 2008, the Court sentenced defendant to 132 months' imprisonment. 4/16/08 Tr. at 34.

Defendant appealed his sentence, arguing that this Court had improperly treated rehabilitation as a reason for imposing a longer term of imprisonment.  In re Sealed Case, 573 F.3d 844, 847 (D.C. Cir. 2009).  Defendant also argued on appeal that he had received ineffective assistance of counsel during plea negotiations.  Id.  The D.C. Circuit agreed with defendant on the sentencing point and remanded the case to this Court for resentencing and for an evidentiary hearing on defendant's ineffective assistance claim.  Id. at 847, 853.

On remand, this Court resentenced defendant to 120 months' imprisonment and held an evidentiary hearing, at which defendant and his federal court counsel, Shawn Moore, testified.  See Judgment on Resentencing [ECF 39]; 6/3/11 Tr.

## DISCUSSION

To attack a guilty plea based on ineffective assistance of counsel, a defendant must

satisfy the two-part test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), by

showing (1) "'that counsel's representation fell below an objective standard of

reasonableness,'" and (2) "that there is a reasonable probability that, but for counsel's errors,

he would not have pleaded guilty." <u>Hill v. Lockhart</u>, 474 U.S. 52, 57-59 (1985) (quoting

<u>Strickland</u>, 466 U.S. at 688).  A "reasonable probability" is "one 'sufficient to undermine

confidence' in the defendant's decision to plead guilty." <u>United States v. McCoy</u>, 215 F.3d

102, 107 (D.C. Cir. 2000) (quoting <u>Strickland</u>, 466 U.S. at 694).  A court need not "address

both components of the [<u>Strickland</u>] inquiry if the defendant makes an insufficient showing

on one." <u>Strickland</u>, 466 U.S. at 697.

Defendant contends that he entered his guilty plea based on constitutionally defective

advice of counsel because: (1) his counsel did not advise him of his sentencing exposure

under the cooperation agreement; and (2) had he been so advised, he would have rejected the

government's plea and cooperation offer and pled guilty in Superior Court "either pursuant to

an agreement, with or without cooperation, or to the indictment itself in order to avoid the

risk of a substantially greater federal court sentence." Def.'s Mot. at 5.  The Court will

address the alleged ineffectiveness of both Stringer, defendant's Superior Court counsel, and

Moore, his counsel in this Court.

As an initial matter, the Court finds it appropriate to consider the effectiveness of

counsel's assistance in Superior Court, because Edward O'Connell, representing a federal

division of the District of Columbia U.S. Attorney's Office, was heavily involved in the

Superior Court plea negotiations and debriefing sessions.  <u>See</u> <u>United States v. Morris</u>, 470

F.3d 596, 600-01 (6th Cir. 2006) (holding that district court had authority to dismiss federal

indictment to remedy denial of defendant's right to counsel in state proceedings "in light of

the federal prosecutor's entanglement with the state plea process").  The government has not

challenged this Court's authority to address Stringer's alleged ineffectiveness.

Defendant argues that Stringer had a duty to advise him of the sentencing

consequences of each of defendant's available options, including (1) letting the case be

transferred to and pleading guilty in federal court, (2) pleading guilty pursuant to a plea

agreement in Superior Court, or (3) pleading "straight up" to the indictment in Superior

Court.  See Def.'s Mot. at 11-13.  Defendant claims that Stringer's performance was deficient

because Stringer did not "aggressively pursue" a Superior Court plea deal, did not tell

defendant that he could plead "straight up" to the Superior Court charges, and certainly did

not advise defendant about the advantages and disadvantages of the three options.  See id.[2]

Defendant makes a persuasive argument on Stringer's deficient performance.  Before

the case was "transferred" to federal court, defendant had at least one alternative to entering a

plea in federal court: he could have pled guilty to the indictment in Superior Court.[3]  At a

minimum, Stringer was required to advise defendant of his sentencing exposure under each

_____

[2] In his reply, defendant also argues, convincingly in the Court's view, that Stringer's performance was deficient because he did not attend most of defendant's debriefing sessions. See Def.'s Reply to U.S.'s Post-Hr'g Summation [ECF 56] ("Reply") at 2-3.  But on the consequence of this allegedly deficient performance, defendant merely states that if Stringer had attended the debriefing sessions he "would have been aware of O'Connell's expressed reservations about the success of the cooperation" and "would have advised [defendant] of the risks of failed cooperation in federal [court]." Id. at 3.  In other words, defendant argues, because Stringer did not attend the debriefing sessions, Stringer did not give defendant competent advice on his options in federal versus state court.  Because this lack of advice is also the substance of defendant's other complaints about Stringer, the Court need not address Stringer's failure to attend the debriefing sessions independently.

[3] As discussed below, it is not at all clear that the government would have re-extended a plea offer in Superior Court.  Therefore, on this record, the Court cannot say that Stringer was ineffective for not "aggressively pursu[ing]" such an offer or for not advising defendant on the advantages and disadvantages of an offer that was not on the table.

of these scenarios.  See Hill, 474 U.S. at 56 (stating that guilty plea must "represent[] a

voluntary and intelligent choice among the alternative courses of action open to the

defendant" (internal quotation marks omitted)); United States v. Gaviria, 116 F.3d 1498,

1512 (D.C. Cir. 1997).  But according to defendant, Stringer said that he did not know what

defendant's sentencing exposure would be under the proposed cooperation agreement and

never told him that he would be treated as a career offender under the federal Sentencing

Guidelines.  Def.'s Aff. ¶ 8.  Accepting these assertions by defendant,[4] Stringer's failure to

inform defendant of his status as a career offender and likely sentencing exposure "'fell below

an objective standard of reasonableness.'"  See McCoy, 215 F.3d at 108 (quoting Strickland,

466 U.S. at 688) ("[F]amiliarity with the structure and basic content of the Guidelines

(including the definition and implications of career offender status) has become a necessity

for counsel who seek to give effective representation." (internal quotation marks omitted));

see also Morris, 470 F.3d at 602-03.

 To prevail on his Strickland claim, however, defendant must also show prejudice.  He

argues that had he known the Sentencing Guidelines range applicable if he accepted the

government's plea and cooperation offer, he would have rejected that offer and pled guilty in

Superior Court.  Mot. Dismiss at 14.  In support of this argument, defendant stresses the

disparity between the applicable guidelines ranges in federal versus state court.  Id.  And in

calculating this disparity, defendant states that "[i]t is likely that the withdrawn offer [of 24-

48 months] would have been re-extended had defendant rejected the offer to cooperate."  Id.

But the record suggests otherwise.  The initial offer came before defendant absconded from

---

[4] Stringer has not participated in the proceedings before this Court, and the
government has not challenged defendant's assertions about Stringer's representation.

the courtroom on April 28, 2006.  It is not likely that the government would have rewarded

defendant for such behavior by re-extending a favorable offer.  In addition, defendant's

debriefing was "mandatory," as he himself acknowledged: "Had they said it wasn't a

mandatory debriefing, that I couldn't get the 24 to 48 months unless I do that, then I probably

wouldn't have done it."  6/3/11 Tr. at 22; see also 4/28/06 Tr. at 2.

It appears, then, that any plea agreement was contingent on defendant's cooperation.

Hence, the Court finds it unlikely that the government would have extended defendant a non-

cooperation offer had he refused to cooperate, particularly after defendant fled in April 2006

and had to be rearrested several months later.  Assuming defendant faced a choice between a

cooperation offer and no offer, he said that the "only way" he would cooperate, i.e., testify

before a grand jury and potentially at a trial, was if he could ensure that his family was safe.

See id.  Accordingly, O'Connell offered to move defendant's case to federal court where he

could give defendant's family relocation benefits.  See id. at 23.  Because defendant agreed to

go to federal court primarily for this reason, see Def.'s Aff. ¶ 9, the Court finds it also

unlikely that defendant would have accepted a cooperation agreement in Superior Court,

where he could not have obtained relocation benefits for his family.

Defendant's choice, then, was between accepting the cooperation agreement in federal

court and pleading "straight up" in Superior Court, so the relevant comparison for

determining prejudice is between those two options.  In federal court, pursuant to the plea

agreement, defendant's guidelines range was 151 to 188 months.  See In re Sealed Case, 573

F.3d at 847.  Had defendant pled guilty to the charges in Superior Court, he would have faced

a statutory maximum of 30 years, just as he did in federal court.  See 21 U.SC.

§ 841(b)(1)(C); D.C. Code § 48-904.01(a)(1)(2)(A).  And as the government points out, in

light of defendant's prior convictions, see Presentence Investigation Report [ECF 51, Ex. 5] ("PSR") at 7-18, he could have faced a statutory maximum of 60 years, had the government proceeded under D.C. Code §§ 23-111 and 48-904.08.  See U.S.'s Post-Hr'g Summation [ECF 55] at 1, 13.  Nonetheless, absent the government's filing of enhancement papers, defendant's guidelines range in Superior Court would likely have been far below 151 to 188 months.  See Superior Court of the District of Columbia Voluntary Sentencing Guidelines § 6.2 (2005) ("multiple offenses in a single event" must be imposed concurrently); id. app. B (Drug Grid) (showing sentencing ranges of, for example, 24-48 months, 28+ months, and 48-90 months, depending on nature of offense and criminal history).

On the flip side, however, the potential benefits of cooperating were substantial. These included relocation benefits for defendant's family—of prime importance to defendant at the time—getting out of jail "really soon" for cooperation purposes, and a lightened sentence.  See 6/3/11 Tr. at 22, 30-31 ("All I wanted to do was get it over, but since they said that I had to do the debriefing, the only way that I would consider that is that I know my daughter wouldn't and my family wouldn't be exposed to the situation because she was almost killed."); see also id. at 50-51, 55-56 (defendant confirming that a "consideration was the possibility that [he] wouldn't have to do any time at all except [the time he was] serving"). At defendant's sentencing, his counsel Moore explained to this Court that defendant, in agreeing to let the case go to federal court, "did not want to serve any time" and "thought that he could cooperate and perhaps get a 5K motion from the government and then ask this Court to sentence him to a period not of incarceration."  4/16/08 Tr. [ECF 31] at 14-15.  As it turned out, defendant's cooperation broke down, and he "fac[ed] a considerably longer period of time because [he did not get] that benefit from the government."  Id. at 15.  But at the time

defendant agreed to do a cooperation agreement, he apparently was willing to forego a short but certain sentence in Superior Court to take advantage of the potential upside to cooperating, including protection for his family and, through a 5K motion, a chance to not "serve any time." See id. at 14, 25; see also United States v. Hanson, 339 F.3d 983, 991 & n.7 (D.C. Cir. 2003); Plea Agreement ¶¶ 19, 25 (5K and Witness Security Program provisions in signed plea agreement). Defendant even told this Court that Stringer had advised him against "not taking" "the 24 months" in Superior Court but that he asked O'Connell to help him and his family relocate and "agreed basically for the cooperation agreement, with that the only goal in mind." 4/16/08 Tr. at 25. Finally, one can only speculate about—and defendant did not know at the time—what would have happened if he had declined to cooperate. The government may have let defendant plead "straight up" in Superior Court, or it may have filed enhancement papers there, or it may have taken the case to federal court despite defendant's preference to stay in Superior Court. Given these considerations, and particularly the fact that defendant's desires drove the transfer to federal court, the Court is not persuaded that there was a "reasonable probability" that defendant would have rejected the cooperation agreement (and transfer to federal court) if Stringer had given him competent advice about his guidelines range in federal court. See McCoy, 215 F.3d at 107; 4/16/08 Tr. at 14-15, 24-26; 6/3/11 Tr. at 105. After all, defendant believed his cooperation would result in little or no prison time. Hence, defendant has not shown Strickland prejudice.

Defendant also challenges his guilty plea based on Moore's alleged ineffectiveness. Defendant complains that Moore did not discuss with him the possibility of pleading "straight up" to the indictment in Superior Court or advise him of the Superior Court guidelines range

for doing so.  See Reply at 6.  But by the time Moore began representing defendant, the plea

agreement was "pretty much in place" and Moore believed that he could not "somehow send

it back" to Superior Court.  See 6/3/11 Tr. at 92, 97.  Also, it was Moore's understanding that

defendant's case came to federal court "because [defendant] wanted to do the cooperation

agreement in federal court."  See id. at 105.  Given these circumstances, Moore acted

reasonably in limiting his advice to the consequences of pleading in federal court.

Defendant argues that this advice, too, was inadequate, because Moore testified only

that he told defendant that he was a career offender and as such was "looking at a substantial

period of time" but could not testify that he told defendant a specific sentencing range.  See

Reply at 7; 6/3/11 Tr. at 91-92.  The Court credits Moore's testimony that he reviewed the

plea agreement with defendant and told defendant he was facing a "substantial" sentence

because he was a career offender under the Sentencing Guidelines.  See 6/3/11 Tr. at 90-92.

Based on these facts and the entirety of Moore's testimony, the Court concludes that Moore's

representation "'was within the range of competence demanded of attorneys in criminal

cases.'"  Hill, 474 U.S. at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).

Hence, defendant's Strickland claim against Moore fails on the first prong.

Even if Moore's performance had been deficient, defendant would not have been

prejudiced by it.  Assuming that Moore did not make clear to defendant his exact guidelines

range of 151 to 188 months, at the plea hearing defendant assured this Court of his

understanding: (1) that he could be sentenced to up to 30 years; (2) that if he were determined

to be a career offender (and defendant no doubt knew that he had an extensive criminal

record), he would be subject to "substantially higher penalties"; and (3) that notwithstanding

any discussions he may have had with the prosecutor or his counsel about his sentencing

range, this Court could not determine his sentence until after it received the presentence report and even then could impose a sentence above or below the Sentencing Guidelines range.  See 6/3/11 Tr. at 24-27; PSR at 7-18.  These assurances undermine defendant's claim that his decision to plead guilty depended on his understanding—based, per defendant's testimony, on Edward O'Connell's representations and defendant's own research—that he would not be sentenced to more than five years under the cooperation agreement.  See Hanson, 339 F.3d at 990.  Indeed, in response to the Court's inquiries, defendant confirmed that there was no agreement or assurance beyond what was set out in the written plea agreement.  See 2/1/07 Tr. at 7-8, 23, 30.  Moreover, defendant in any case had reason to expect a lower sentence under the plea agreement than he would otherwise get because "he anticipated providing substantial assistance to the government."  See Hanson, 339 F.3d at 991.  Defendant's cooperation broke down after the fact, but at the time he entered his guilty plea, the plea offered the benefits of immediate release and "a good chance of obtaining a sentence well below the (correctly calculated) guidelines range if he followed through on his pledge of cooperation."  See id.  That defendant may have misunderstood his Sentencing Guidelines range in terms of months does not undermine this Court's confidence in defendant's informed decision to plead guilty once the case was in federal court.  See McCoy, 215 F.3d at 107.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss due to ineffective assistance of counsel will be denied.  A separate order accompanies this memorandum opinion.

**SO ORDERED**.

_____
/s/
JOHN D. BATES
United States District Judge

Dated: November 20, 2012